﻿Citation Nr: AXXXXXXXX
Decision Date: 01/02/19 Archive Date: 01/02/19

DOCKET NO. 181017-571
DATE: January 2, 2019

ORDER

Whether the Veteran's character of discharge, for the period of service from January 16, 1983 through September 6, 1984, is dishonorable and a bar to his receipt of Department of Veterans Affairs (VA) benefits is denied.

FINDINGS OF FACT

1. The Veteran had more than one period of service; he entered military service on January 16, 1979 and his initial enlistment obligation was for a period of four years (i.e., through January 15, 1983); thereafter, he had multiple reenlistments including on September 4, 1980, when he reenlisted for three years (i.e., his next obligation was through January 15, 1986). 

2. The Veteran’s military service from January 16, 1983 through September 6, 1984, the period following the satisfactory completion of his initial enlistment obligation, involved willful and persistent misconduct on his part, and his discharge is considered to be under dishonorable conditions; he is not shown to have been insane at the time of the commission of the offenses leading to his discharge on September 6, 1984. 

CONCLUSION OF LAW

The Veteran’s character of discharge (under other than honorable (OTH) conditions), for the period of service from January 16, 1983 through September 6, 1984, is dishonorable and a bar to his receipt of VA benefits. 38 U.S.C. §§ 101(2), (18), 5107, 5303; 38 C.F.R. §§ 3.1, 3.12. 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty from January 1979 to September 1984. He was discharged “Under Other Than Honorable Conditions.” The matter comes to the Board of Veterans’ Appeals (Board) on appeal from a July 2017 administrative decision by a VA Regional Office (RO). 

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 2(w)(2)(c)(2) (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. After the Veteran’s April 2018 election to participate in RAMP (specifically, the higher-level review process), an October 2018 Higher-Level Review decision of the RO continued to deny the Veteran’s appeal. Thereafter, the case was transferred to the Board for its consideration. This decision, pertaining solely to the matter of the Veteran’s character of discharge for the period of service from January 16, 1983 through September 6, 1984, has been written consistent with the new AMA framework. 

The Board notes that the RO will be adjudicating other claims (i.e., entitlement to a compensable rating for hypertension, and entitlement to service connection for a neck disability, a back disability, a psychiatric disability, a disability manifested by dizziness, and headaches) after completion of further development by the RO. 

Whether the Veteran's character of discharge, for the period of service from January 16, 1983 through September 6, 1984, is dishonorable and a bar to his receipt of VA benefits.

A veteran is a person discharged or released from active service under conditions other than dishonorable. 38 U.S.C. § 101(2); 38 C.F.R. § 3.1(d). VA benefits are not payable unless the period of service upon which the claim is based was terminated by discharge or release under conditions other than dishonorable. 38 U.S.C. § 5303; 38 C.F.R. § 3.12(a). 

Under 38 C.F.R. § 3.12, a discharge or release because of willful and persistent misconduct is to be considered to have been issued under dishonorable conditions. 38 C.F.R. § 3.12(d)(4). This includes a discharge under OTH conditions if it is determined that it was issued because of willful and persistent misconduct. A discharge because of a minor offense will not, however, be considered willful and persistent misconduct if service was otherwise honest, faithful, and meritorious. Id. A discharge or release from service because of willful and persistent misconduct is a bar to the payment of VA benefits unless it is found that the person was insane at the time of committing the offense. 38 C.F.R. § 3.12(b).

Willful misconduct means an act involving conscious wrongdoing or known prohibited action. An act is willful misconduct where it involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences. 38 C.F.R. § 3.1(n).

The Veteran’s DD Form 214, Certificate of Release or Discharge from Active Duty reflects that he served on active duty from January 16, 1979 to September 6, 1984. This decision only considers a portion of his total active duty service, because the period of service from January 16, 1979 through January 15, 1983 is deemed honorable for purposes of determining entitlement to VA benefits. The record appears to present conflicting periods of service and whether discharges are honorable or dishonorable. For instance, in a December 1997 decision of the Army Discharge Review Board, the period of service under review for an upgrade in the Veteran’s character of service was from October 5, 1983 to September 6, 1984; the Discharge Review Board had noted that the Veteran’s other periods of service from January 16, 1979 through September 3, 1980 and from September 4, 1980 through October 4, 1983 had honorable discharges (these two periods reflect instances where the Veteran reenlisted, as will be mentioned later). However, for VA purposes, the term “discharge or release” includes “the satisfactory completion of the period of active military, naval, or air service for which a person was obligated at the time of entry into such service [emphasis added] in the case of a person who, due to enlistment or reenlistment, was not awarded a discharge or release from such period of service at the time of such completion thereof and who, at such time, would otherwise have been eligible for the award of a discharge or release under conditions other than dishonorable.” 38 U.S.C. § 101(18). 

Here, the Veteran had more than one period of service. He entered service on January 16, 1979, and importantly service personnel records show that his initial enlistment obligation was for a period of four years (i.e., through January 15, 1983). Other service records show that he reenlisted on multiple occasions: on September 4, 1980 he “reenlisted” for a period of three years (i.e., his next obligation was extended through January 15, 1986), on October 14, 1980 he extended that enlistment to three years and four months (i.e., his obligation would instead run through May 15, 1986), and finally on October 5, 1983 he reenlisted for an additional three years (i.e., his obligation would run through May 15, 1989). Given that the Veteran satisfactorily completed his initial enlistment obligation on January 15, 1983 (even though he was not awarded a discharge per se from such period of service – but was eligible for discharge under conditions other than dishonorable – due to his reenlistment), the Board in this case considers the characterization of his second period of service that begins January 16, 1983 and ends with his discharge on September 6, 1984. In other words, the originally obligated term of service is considered meritorious, even if there was a subsequent discharge under dishonorable conditions. 

The Veteran’s service personnel records show that the character of his service when he was discharged from the Army on September 6, 1984 was Under OTH Conditions; the narrative reason for his separation was misconduct – pattern of misconduct. According to the Recommendation for Separation, dated in August 1984, by his commanding officer, the Veteran had been “guilty of misconduct” and that was “how his service should be characterized.” He stated that the Veteran had been absent from duty consistently since the spring of 1984 and had been given help with his problems, but he had responded with “more UCMJ offenses.” He noted that the Veteran had been given counseling, counseling statement, non-judicial punishment, and a Summary Court-Martial, but his reactions to these measures had been “negative” and his problems grew worse with each attempt to help him solve them. In a similar memorandum earlier in August 1984, the commanding officer recommended immediate separation due to multiple instances of misconduct and drug use. He noted that the Veteran had been disciplined under the UCMJ on three separate occasions, one of which was trial by summary court-martial, and that instances of misconduct included dereliction of duty, breach of restriction with the intent to desert, and four counts of failure to repair. Further, it was noted that the Veteran had been identified as a user of THC (marijuana/hashish) and that various articles of drug contraband and paraphernalia were confiscated in his off-post quarters and turned over to the local police for civil action. The Veteran was noted to have been enrolled in a drug rehabilitation program (ADAPCP) from June 1982 to July 1983 for admitted daily use of hashish. Additionally, the commanding officer noted that the Veteran was also suspected of government check fraud in that he requested a reissue of his December 1983 paycheck due to non-receipt but that he had already received and cashed the check. The Veteran was subsequently advised by consulting counsel on the basis for the contemplated action to separate him from the military and its effects and rights available to him, and he waived consideration of his case by a board of officers. On a July 1984 Report of Mental Status Evaluation, the Veteran was found to have normal behavior, was fully alert and oriented, and had clear thinking process and normal thought content. It was the impression of the examiner that the Veteran had the mental capacity to understand and participate in the proceedings and was mentally responsible. 

After service, the Veteran requested a change in the character and/or reason of his military discharge (he desired an upgrade to a General Discharge Under Honorable Conditions), and in December 1997 the Army Discharge Review Board (ADRB) denied his request and determined he had been properly and equitably discharged. In a summary of the facts and circumstances concerning the Veteran’s discharge, the ADRB included the following: in December 1983 the Veteran’s unit commander was notified that the Veteran committed fraud by negotiating his paycheck that month, then stopping payment and obtaining a cash advance for the same amount; in April 1984 the Veteran’s unit commander had been notified that the Veteran had cashed a check with insufficient funds in his account; in June 1984 the Veteran tested positive for marijuana on a unit drug screening; in July 1984 the unit commander was notified that the Veteran had failed to pay just debt for dependent medical treatment at an Army hospital; in July 1984 the Veteran received a nonjudicial punishment for failing to go to his appointed place of duty on four separate occasions; in July 1984 the Veteran was charged by civil authorities with possession of drug paraphernalia; in July 1984 the Veteran was tried and convicted by summary court-martial for disobedience of a lawful order and breaking restriction; and in July 1984 the Veteran was found fit for separation on a mental status examination. Each of the cited incidents is corroborated by documents in the Veteran’s service personnel record. The ADRB found the Veteran’s discharge was appropriate because the quality of service determination was inconsistent with the Army’s standards for acceptable personal conduct and performance of duty, and the Veteran had provided no independent corroborating evidence demonstrating that either the command’s action was erroneous or that the Veteran’s service mitigated the misconduct or poor duty performance. 

A July 2017 RO Administrative Decision found that the Veteran’s actions and offenses committed during the period of service from January 16, 1983 to September 6, 1984 constituted willful and persistent misconduct. These actions and offenses were the same ones cited by the ADRB. The RO concluded that such period of service was to be held terminated under OTH conditions, and constituted a bar to VA benefits (except medical treatment). That same month, the RO issued a determination, based on the July 2017 Administrative Decision, that the Veteran’s character of discharge was dishonorable for VA purposes and thus a bar to his receipt of VA benefits because he was administratively discharged under OTH conditions due to misconduct that constituted willful and persistent misconduct. 

The Board finds that the preponderance of the evidence is against the Veteran’s claim, and that his actions during the period of service from January 16, 1983 to September 6, 1984 constituted willful and persistent misconduct. The recommendations and proceedings culminating in the Veteran’s September 6, 1984 discharge, as documented in service personnel records and further described by the ADRB, cite to numerous incidents throughout the previous year whereby the Veteran committed various offenses including drug-related infractions. The Board finds that the Veteran’s conduct was willful as well as persistent. That is, the incidents were not isolated, occasional, or infrequent, as they were repeated over many months, and they involved wrongdoing that can only be viewed as deliberate and intentional. The nature of the acts – his poor duty performance and financial-related problems – shows that the Veteran knew what he was doing and the probable consequences of his actions, particularly as his commanding officer repeatedly counseled him. On one such counseling form, dated in June 1984 and acknowledged (signed) by the Veteran, he was directly informed that if his poor performance and financial troubles continued, it could lead to his premature separation from service, under AR 635-200 (misconduct), which in turn could lead to “a substantial loss of veterans benefits.” 

In October 2018 the Veteran’s attorney argued that due to insanity, the offenses that led to the Veteran’s discharge cannot serve as a bar to VA benefits. The attorney asserted that it was “undisputed that [the Veteran] suffered from insanity during his active duty and that this led to his misconduct.” He stated that the Veteran had “detailed his traumas” and that he himself had previously forwarded to the RO in-patient records of the Veteran and his treatment for a mental health condition after complaining of suicidal ideation. He argued for a favorable decision or for a remand to determine the Veteran’s state of mind at the time of the offenses. Notably, the Veteran has a pending claim involving service connection for a psychiatric disability, which is currently being developed by the RO; however, the Board does not deem a remand to be the proper course of action here and does not perceive the instant character of discharge issue to be inextricably intertwined with the psychiatric disability claim. 

Insanity is a defense to all statutory and regulatory bars to benefits. See 38 U.S.C. § 5303(b); 38 C.F.R. § 3.12(b). For VA purposes, an insane person is defined as an individual who, due to disease, exhibits a “prolonged deviation from his normal method of behavior; or who interferes with the peace of society; or who has so departed (become antisocial) from the accepted standards of the community to which by birth and education he belongs as to lack the adaptability to make further adjustment to the social customs of the community in which he resides.” 38 C.F.R. § 3.354(a). 

The military in-patient records of mental health treatment in the record are dated in October 1981, well prior to the period of service under consideration in this decision. They show that the Veteran received a diagnosis of adjustment reaction of adult life after complaining of suicidal ideation and depression, and that after a hospital stay of five days, he was discharged to duty and did not require medical disposition. In a May 2017 statement, the Veteran’s attorney requested the RO to obtain relevant Federal records to satisfy VA’s duty to assist, but the particular records he requested are pertinent to the time period between March 1980 and 1981, which again alludes to a period of service that is not under review in this decision. As to any reference to the Veteran’s state of mind during the period of review from January 16, 1983 to September 6, 1984, the service treatment records – which do appear to be complete for this period – do not show any complaints, findings, or diagnosis of mental disease (beyond the comments noting the Veteran’s involvement in drug-related offenses). In fact, a July 1984 Report of Mental Status Evaluation discloses that the Veteran had normal behavior, clear thinking process, normal thought content, and was fully alert and oriented; the examiner opined that the Veteran had the mental capacity to understand and participate in the proceedings [relative to a court-martial that month] and was mentally responsible. With the numerous offenses and misconduct charged of the Veteran around that same time frame, to include a July 1984 summary court-martial, in which he was convicted for disobeying a lawful order of a superior and breaking restriction (for which he received a reduction in rank and confinement at hard labor for a 30-day period), it cannot be shown that he was insane at the time. The contemporaneous records do not support such a finding. 

In July 1984 the Veteran indicated that he did not desire to undergo a separation medical examination, so there are no other medical records beyond the mental status evaluation report by which to evaluate the Veteran’s state of mind/behavior, and whether he would meet VA’s definition of insanity. The service records do not show he had a disease during the period under review that resulted in his interference with the “peace of society,” that caused him to become “so departed” from accepted community standards that he was unable to adapt and make adjustments to the “social customs of the community,” or that caused him to exhibit a “prolonged deviation from his normal method of behavior.” Interestingly, in requesting an upgraded discharge of the ADRB, the Veteran indicated on an application in October 1995 that he “forced my way out [of the military] due to trouble at home (spouse).” Indeed, in his May 2017 statement discussing his military experiences, the Veteran described his turbulent family life and his financial struggles. In the Board’s judgment, his portrayal of himself and the circumstances leading to his discharge do not depict an individual who meets the VA definition of insanity, even if he was currently found to have had a latent psychiatric disability at the time. 

After a careful review of all the evidence, the Board finds the attorney’s allegations of insanity during the period under review are unsubstantiated. Notably, the RO is in the process of arranging a VA examination and medical opinion in connection with the Veteran’s claim of service connection for a psychiatric disability, but any evidence procured from such development would not alter the Board’s finding of no insanity for the period from January 16, 1983 to September 6, 1984. The determination of insanity is a legal one, not a medical one, and it has been based on all available and procurable records concerning the period at issue. 

From the evidence of record, the Board finds that the Veteran’s actions which led to his “under conditions other than honorable” discharge constituted “willful and persistent misconduct” under VA law. In support of this finding, the Board makes the following observations. The offenses and infractions were multiple, varied, and deliberate; therefore, they cannot be perceived as a “minor offense” under 38 C.F.R. § 3.12(d)(4). As to the positive drug test and discovery of drug paraphernalia in July 1984, it is noted that there had previously been a prolonged attempt to address the Veteran’s drug-seeking behavior when he was enrolled in a drug rehabilitation program from June 1982 to July 1982. Moreover, the Veteran’s commanding officer cited to efforts that were made to help the Veteran modify his performance, to no avail; the Veteran was instead reported to be rather recalcitrant and resistant to reforming his conduct to be consistent with that expected from the Army. In short, the Board perceives the numerous and varied offenses during the period of service from January 16, 1983 to September 6, 1984 to have been more than minor transgressions, and finds that the offenses in total warrant an overall characterization of willful and persistent misconduct. 

Based on the foregoing evidence, the Board concludes the Veteran’s character of his discharge for the period of service from January 16, 1983 to September 6, 1984 is dishonorable and is a bar to his receipt of VA benefits other than medical treatment.

 

George R. Senyk

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Debbie Breitbeil, Counsel